The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the deputy commissioner. The appealing party has shown good ground to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of the deputy commissioner and enters the following Opinion and Award.
The Full Commission finds as facts and concludes as matters of law the following, which were agreed upon by the parties at the hearing and in a Form 21 Agreement filed 27 April 1992 as
STIPULATIONS
The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
Aetna Life Casualty is the insurance carrier for defendant-employer.
Plaintiff sustained and injury by accident arising out of and in the course of the employment on 26 March 1992 resulting in a back injury.
Plaintiff's average weekly wage was $340.00.
Records pertaining to plaintiff from the following medical providers are stipulated into evidence:
Catawba Bone and Joint Clinic
Charles L. Branch, Jr., M.D.
Stephen G. Fleming, M.D.
William H. Knight, Ph.D.
Scott M. McCloskey, M.D.
Jennie Sinclair, P.T.
Raymond C. Sweet, M.D.
H. Grey Winfield, III, M.D.
* * * * * * * * * * * * * * * *
The Full Commission rejects the findings of fact of the deputy commissioner and finds as follows
FINDINGS OF FACT
At the time of the hearing in this matter, plaintiff was forty-two years old, had a second grade education and was functionally illiterate. His prior work history was as a truck driver despite the fact that he could not read road signs and was dependent on verbal directions. His medical history included a prior back injury sustained while working with defendant-employer which resulted in intermittent back pain. At the time of his back injury plaintiff was employed with defendant-employer as a warehouse worker and truck driver.
On 26 March 1992 plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer when he fell backwards off of a truck onto a pile of irregularly shaped pieces of steel. He landed on his back, left hip and buttocks.
Plaintiff sought treatment from Dr. H. Grey Winfield, III, an orthopaedic surgeon, the day after his injury. Plaintiff complained of back and thigh pain. Dr. Winfield's initial impression was lumbar strain with an underlying lumbar disc problem. He prescribed physical therapy and allowed plaintiff to remain out of work until his return visit. Plaintiff reported at his 14 April 1992 visit that physical therapy had improved the pain in his upper back that but his lower back and leg still hurt. Based on his examination of plaintiff, however, Dr. Winfield, believed that plaintiff was exhibiting symptom magnification, and on 14 April 1992 recommended that plaintiff return to light duty work which would allow him to stand and sit as needed and limit heavy lifting. Plaintiff felt that he was not able to meet these restrictions and asked for a second opinion.
Plaintiff presented to Dr. Scott M. McCloskey, a neurologist, on 18 May 1992 as a self-referral. Plaintiff related his on the job injury to Dr. McCloskey and complained of chronic neck and right shoulder pain, and low back and leg pain. Dr. McCloskey's examination revealed tenderness and limited range of motion but no major neurological defects. His initial diagnosis was neck pain radiating into the upper shoulder area. He ordered a bone scan, myelogram, and MRI, and kept plaintiff out of work pending the results of these tests. The test results did not reveal any significant structural abnormalities, but did show a questionable defect at the T6-7 level. Because the tests were essentially normal, on 17 September 1992, Dr. McCloskey opined that plaintiff was no longer 100% disabled and recommended that plaintiff undergo a functional capacity evaluation. On 3 November 1992 Dr. McCloskey released plaintiff from his care.
During the period that plaintiff was being treated by Dr. McCloskey he was evaluated by Dr. Raymond C. Sweet, a neurologist, on 23 July 1992 upon referral by defendant-carrier. Plaintiff informed Dr. Sweet of his on the job accident and that his treatment by Dr. Winfield and Dr. McCloskey did not provide relief from his back and leg pain. Dr. Sweet noted that plaintiff's x-rays and MRI showed no evidence of herniation or nerve impingement, and opined that plaintiff's complaints were out of proportion to the physical findings. He recommended on 23 July that plaintiff undergo a short work-hardening program and a functional capacity evaluation, or be returned to light duty work with restrictions.
Plaintiff was referred to Western North Carolina Rehabilitation Center for a functional capacity evaluation. On 14 and 15 October 1992, Jennie Sinclair, a physical therapist, attempted to administer the evaluation. Plaintiff did not complete the evaluation after Ms. Sinclair confronted him on 15 October 1992 regarding inconsistencies between his pain behaviors and the evaluation measurements. At that time plaintiff became abusive and left the testing facility. Although plaintiff's behavior on 15 October 1992 constituted an unjustifiable refusal to cooperate with vocational rehabilitation efforts and recommended medical treatment, defendant did not seek an Order from the Industrial Commission compelling plaintiff to complete the functional capacity evaluation.
Between March 1993 and March 1994 plaintiff sought treatment from Stephen G. Fleming, M.D., an orthopaedic surgeon. Dr. Fleming was not able to offer plaintiff any relief from his complaints. Plaintiff also sought treatment from Catawba Bone 
Joint Clinic beginning in May 1993. By June 1993 the Clinic had informed plaintiff that they had no treatment options for him. On 23 March 1994 a physician at the Clinic opined that plaintiff retained a fifteen percent (15%) permanent partial impairment to his back due to chronic back pain and severe left sciatica.
All of plaintiff's treating physicians noted that plaintiff walked bent over at the waist with an antalgic gait, but after extensive testing and review none could find an anatomic basis for plaintiff's pain symptoms.
On 2 December 1994 plaintiff was examined by William H. Knight, a psychologist, for an assessment of his intelligence, reading level and mental status for a determination of Social Security disability benefits. Plaintiff related to Dr. Knight his injury by accident and that he had been unable to work since the accident due to pain. Testing revealed that plaintiff was in the mentally retarded range, was functionally illiterate, and was extremely angry, suicidal, and homicidal. During this assessment plaintiff made homicidal threats specifically against defendant-employer. Dr. Knight found plaintiff so seriously depressed that he recommended hospitalization, or at least out-patient treatment for his depression, and opined that plaintiff was unable to work due to his illness.
Dr. Knight opined that plaintiff's pain behavior, depression, and anxiety were work related. Plaintiff had no prior history of treatment for depression before his injury. Dr. Knight believed that when plaintiff was working his body was dealing naturally with the pains he was normally experiencing; that following his injury and the development of depression and anxiety, plaintiff's body did not naturally deal with the pain he was experiencing thus making his pain intolerable; and, that his depression and anxiety stemmed from his inability to work to support himself financially.
No weight is accorded the opinion of Dr. Knight that plaintiff's depression and anxiety were caused by his work related injury. Plaintiff's depression was first diagnosed more than two and one-half years after his compensable injury and approximately one and one-half years after he was released from care by his treating physician. Other than plaintiff's subjective complaints of pain there is no evidence that plaintiff is incapable of working and supporting himself subsequent to 16 June 1993. Therefore, plaintiff has not proven by the greater weight of the evidence that his depression and anxiety were direct and natural consequences of his compensable injury.
Plaintiff's refusal to cooperate with defendant's efforts to establish his functional capabilities prevented defendants from identifying jobs that may be suitable to plaintiff's limitations. Plaintiff refused any employment that might have been available through defendant-employer on 8 April 1993. Consequently, plaintiff is not entitled to temporary total disability compensation after reaching maximum medical improvement.
Joel White, Chairman and CEO at defendant-employer, testified that he told plaintiff in April 1992 that he could return to work and do whatever duties plaintiff thought would not bother his conditions. The types of light duty work available through defendant-employer were using an automatic floor sweeper, emptying trash, color coding inventory, and running errands to the store or bank. Mr. White could not specifically recall the date that he allegedly informed plaintiff to report to work to do a particular job with definite responsibilities, but he did testify that he remembered telling plaintiff that he could return to work to sweep the floor. Mr. White said he made this job offer to plaintiff based on his understanding that Dr. Winfield had recommended that plaintiff could return to work with restrictions. Mr. White further testified that he verbally informed plaintiff that he could return to work, but he did not put the offer in writing or have the position approved by Dr. Winfield. Joel White wrote a letter dated 2 April 1993 wherein he certified that defendant-employer had offered to provide light duty work for plaintiff. This letter was sent to plaintiff and defendant-insurance carrier.
On 8 April 1993 after receipt of the letter from Joel White, plaintiff wrote a letter to defendants stating that he would not return to work with defendant-employer as a maintenance worker or in any capacity because he was unable to maintain and care for his own home. Plaintiff's letter constituted a constructive refusal to accept any offer of suitable employment from defendant-employer, thereby relieving defendant-employer of any obligation to further offer employment to plaintiff upon his release to return to work or at the end of his healing period.
In March, 1993 plaintiff contacted Mr. White to discuss his profit sharing account. They had an angry exchange of words and Mr. White told plaintiff to leave the property and never return. Plaintiff and Mr. White did not discuss a possible return to work date at that time.
Defendants have not proven by the greater weight of the evidence that plaintiff was offered suitable employment, or that plaintiff unjustifiably refused suitable employment prior to April, 1993.
Defendants ceased temporary total disability compensation payments to plaintiff on 1 April 1993. On 8 April 1993 after benefits had already been unilaterally terminated, defendants filed a Form 24 Application of Employer or Insurance Carrier to Stop Payment of Compensation, which the Industrial Commission approved on 23 April 1993. Defendants had paid plaintiff a total of fifty-three weeks of compensation, from 27 March 1992 through 1 April 1993.
Although there is no medical opinion in the record stating the exact date plaintiff reached maximum medical improvement, Dr. Flemming advised plaintiff on 16 June 1993, 3 September 1993, and 22 October 1993 that there was no further treatment he could provide. Also, a physician at Catawba Bone and Joint Clinic released plaintiff to return as needed on 10 June 1993. Plaintiff was rated by the Clinic on 23 March 1994, nine months after he was released, with a fifteen percent (15%) permanent partial impairment of the back.
Based on the greater weight of the evidence, plaintiff reached maximum medical improvement on 16 June 1993.
There is no evidence of record to show that plaintiff attempted to find employment suitable to his capacity after he reached maximum medical improvement and was released from his doctor's care on or before 16 June 1993. On 16 June 1993 plaintiff was capable of earning the same or greater wages as he earned prior to his injury and was therefore no longer disabled. Plaintiff's constructive refusal to accept any offer of suitable employment by defendant-employer suspends his right to further temporary total disability compensation during the continuance of such refusal.
The Industrial Commission's approval of the Form 24 Application of Employer or Insurance Carrier to Stop Payment of Compensation was improvidently granted and should be rescinded.
Plaintiff's average weekly wage of $340.00 yields a compensation rate of $226.68.
* * * * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows
CONCLUSIONS OF LAW
On 26 March 1992 plaintiff sustained an admittedly compensable injury to his back by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2 (6).
Plaintiff unjustifiably failed to cooperate with recommended medical treatment related to this injury in October, 1992. Defendants, however, did not seek an Order of the Industrial Commission directing plaintiff to comply. Thus, plaintiff's conduct did not bar him from further compensation. N.C. Gen. Stat. § 97-25.
Plaintiff reached maximum medical improvement on 16 June 1993. Plaintiff has not made a reasonable effort to find suitable employment after reaching maximum medical improvement. Plaintiff constructively refused any effort from defendant-employer to offer suitable employment by his 8 April 1993 letter. Any entitlement to temporary total disability compensation plaintiff may have had after he reached maximum medical improvement is suspended after 16 June 1993 due to plaintiff's constructive refusal of efforts by defendant-employer to provide suitable employment. Plaintiff is entitled, however, to temporary total disability compensation until he reached maximum medical improvement and was released to return to work on 16 June 1993. N.C. Gen. Stat. §§ 97-22, 97-29.
Plaintiff is entitled to payment by defendants of additional temporary total disability compensation at the rate of $226.68 per week from 2 April 1993 through 16 June 1993. N.C. Gen. Stat. § 97-29.
Plaintiff is entitled to payment by defendants of $226.68 per week for 45 weeks for the fifteen percent (15%) permanent partial impairment to his back. N.C. Gen. Stat. § 97-31 (23).
Plaintiff is entitled to payment by defendants of all reasonable medical expenses incurred as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * * * *
ORDER
Commission's approval of the Form 24 Application of Employer or Insurance Carrier to Stop Payment of Compensation is VACATED.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
Defendants shall pay to plaintiff weekly temporary total disability compensation benefits at the rate of $226.68 per week from 2 April 1993 through 16 June 1993. This compensation has accrued and shall be paid to plaintiff in one lump sum, uncommuted, subject to the attorney fee hereinafter approved.
Defendants shall pay permanent partial disability compensation to plaintiff at the rate of $226.68 per week for 45 weeks for the fifteen percent (15%) permanent partial impairment to his back. This compensation has accrued and shall be paid to plaintiff in one lump sum, uncommuted, subject to the attorney fee hereinafter approved.
Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident when bills for same have been submitted and approved through procedures adopted by the Industrial Commission. Defendants are not required to pay for psychological treatment for depression.
A reasonable attorney's fee of twenty-five percent (25%) of the accrued compensation due plaintiff herein is approved for plaintiff's counsel. Said attorney's fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
Defendants shall bear the costs, including as part thereof expert witness fees in the amount of $265.50 to Dr. Raymond C. Sweet.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, Jr. CHAIRMAN
S/ _________________________ LAURA K. MAVRETIC COMMISSIONER
BSB:be